IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JOE A. TREVINO d/b/a/ ELECTRICIAN SERVICE, | ) ) ) | No. 5:13-CV-00924-DAE |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| COOLEY CONSTRUCTORS, INC., | ) ) | |
| Defendant. | ) ) | |

ORDER GRANTING DEFENDANT'S MOTION TO TRANSFER VENUE

On June 9, 2014, the Court heard oral argument on a Motion to Transfer Venue filed by Defendant Cooley Constructor ("Defendant"). (Dkt. # 7.) After careful consideration of the memoranda in support of and in opposition to the Motion, and in light of the parties' arguments at the hearing, the Court, for the reasons that follow, **GRANTS** Defendant's Motion.

BACKGROUND

Defendant was the general contractor for a construction project at Laughlin Air Force Base in Val Verde County, Texas. ("Compl.," Dkt. # 1 at 3.) In May 2010, Defendant contacted Plaintiff Joe A. Trevino d/b/a/ Electrician Service ("Plaintiff") requesting that he submit a bid for the electrical work on the

1

project. (Id.) Defendant sent a Subcontract Agreement dated May 28, 2010, to Plaintiff's principal office in Uvalde, Texas. (Id.) Plaintiff signed the Subcontract Agreement and forwarded it back to Defendant, who also signed. (Id.) Pursuant to the Subcontract Agreement, Plaintiff was hired as a subcontractor to perform electrical work at the project site and provide the materials and supplies necessary for him to perform the work. (Id.)

On July 31, 2010, Plaintiff submitted his first Application and Certificate for Payment ("Application") to Defendant. (Id. at 4.) Several Applications followed the initial Application, requesting payment. (Id.) According to Plaintiff, the Subcontract provided that "progress payments shall be made to the Subcontractor" no later than thirty days after receipt. (Id.) However, Plaintiff did not receive his first payment until September 29, 2010, and that was only a partial payment. (Id.) On October 19, 2013, Plaintiff filed suit against Defendant, alleging claims for breach of contract and quantum merit. (Id. at 5.) Plaintiff asserts that as a result of the breach of the subcontract, he is owed approximately $105,938.36 for work performed. (Id. at 4.)

On December 12, 2013, Defendant filed the instant Motion to Transfer Venue to the Western District of Oklahoma under 28 U.S.C. § 1404(a) because a mandatory forum-selection clause in the Subcontract Agreement between the parties requires suits to be brought in that venue. ("Mot.," Dkt. # 7 at

1.) On January 5, 2014, Plaintiff filed a Response. ("Resp.," Dkt. 9.) On January 10, 2014, Defendant filed a Reply. ("Reply," Dkt. 10.)

ANALYSIS

I. Whether the forum-selection clause is contractually valid

Before addressing the Defendant's request to transfer venue under § 1404(a), the Court must first determine whether the forum-selection clause in the Subcontract Agreement is contractually valid. See Braspetro Oil Servs. Co. v. Modec (USA), Inc., 240 F. App'x. 612, 616 (5th Cir. 2007) (enforcing a forum-selection clause requires first assessing the clause's contractual validity and scope). Whether a forum-selection clause applies to the present case involves two separate inquiries: (1) whether the forum-selection clause is enforceable, and (2) whether the present case falls within the scope of the forum-selection clause. Brown v. Federated Capital Corp., --- F. Supp. 2d ----, 2014 WL 97292, at *2 (S.D. Tex. Jan. 6, 2014) (citing Stinger v. Chase Bank, USA, NA, 265 F. App'x 224, 226–27 (5th Cir. 2008)). Plaintiff does not contest that his claim for breach of contract falls within the scope of the forum-selection clause. Because he does not, and the Subcontract Agreement clearly states that the forum-selection clause applies to "any litigation under this contract," (Mot., Ex. 1 at 27 (emphasis added)), the Court need not address that issue.

1. <u>Enforceability of Forum-Selection Clause</u>

The Fifth Circuit holds that federal law applies to determine the enforceability of forum-selection clauses in both diversity and federal question cases. <u>Braspetro Oil Services Co.</u>, 240 F. App'x at 615 (citing <u>Haynsworth v. The Corp.</u>, 121 F.3d 956, 962 (5th Cir. 1997)); <u>see also</u> <u>Ginter ex rel. Ballard v. Belcher, Prendergast & Laporte</u>, 536 F.3d 439, 441 (5th Cir. 2008) (enforcement of forum-selection clause depends on federal law). According to federal law, "such clauses 'are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances.'" <u>Braspetro Oil Services Co.</u>, 240 F. App'x at 615 (quoting <u>M/S Bremen v. Zapata Off-Shore Co. ("The Bremen")</u>, 407 U.S. 1, 10 (1972)); <u>accord</u> <u>Ginter</u>, 536 F.3d at 441.

In <u>Haynsworth</u>, the Fifth Circuit provided a list of four factors to determine whether a forum-selection clause may be considered unreasonable: (1) the incorporation of the forum-selection clause into the agreement was the product of fraud or overreaching; (2) the party seeking to escape enforcement "will for all practical purposes be deprived of his day in court" because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or (4) enforcement of the forum-selection clause would contravene a strong public policy of the forum state. <u>Haynsworth</u>, 121 F.3d at 963. The party resisting the forum-selection clause's

4

enforcement on these grounds bears a "heavy burden of proof." Id. (quoting The Bremen, 407 U.S. at 17).

          a.      Incorporation of the Forum-Selection Clause Was Not the Product of Fraud or Overreaching

"[U]nreasonable fraud or overreaching does not mean that any time a dispute arising out of a transaction is based upon an allegation of fraud[,] . . . the clause is unenforceable." Id. (quoting Scherk v. Alberto-Culver Co., 417 U.S. 506, 519 n.14 (1974)). "Rather, it means that an arbitration or forum-selection clause in a contract is not enforceable if the inclusion of that clause in the contract was the product of fraud or coercion." Id. "Allegations of such [fraudulent] conduct as to the contract as a whole—or portions of it other than the [forum-selection] clause—are insufficient; the claims of fraud or overreaching must be aimed straight at the [forum-selection] clause in order to succeed." Id.

Plaintiff does not allege that the forum-selection clause was the product of fraud or overreaching; rather, he argues that the forum-selection clause should not be enforced because it was not communicated to him. (See Resp. at 2–3.) Specifically, Plaintiff asserts that the entire thirty-two-page Subcontract is comprised of seventeen different articles with two single-space columns on each page, and none of the individual articles were negotiated between the parties. (Id.) Plaintiff states that the forum-selection clause "was not discussed, mentioned, nor negotiated between the Defendant and Plaintiff," and Plaintiff was "unaware and

5

had no knowledge of such forum selection clause." (Id.) Plaintiff cites no authority to support his proposition that the form of the Subcontract renders it unenforceable.

Although Plaintiff argues that he was unaware of the clause, the Fifth Circuit only considers whether the enforcement of the forum-selection clause is "unreasonable under the circumstances," namely whether the inclusion of the clause was the product of fraud or coercion. Braspetro Oil Services Co., 240 F. App'x at 615. And, here, despite Plaintiff's arguments that he was unaware of the forum-selection clause, its enforcement is not unreasonable.

In Abramson v. America Online, Inc., 393 F. Supp. 2d 438 (N.D. Tex. 2005), the plaintiff argued that she was unaware of the contract and its provisions because her son had set up her AOL account on her behalf; thus, she argued that she never reviewed the Member Agreement containing the forum-selection clause. The court disagreed, stating:

> Although there is no evidence indicating whether she actually became aware of the terms of the Member Agreement, it is beyond doubt Abramson knew her service with AOL was subject to a contract. Her failure to review the terms of that contract, while accepting its benefits, demonstrates affirmative acquiescence to the Member Agreement.

Id. at 441.

Moreover, even assuming Plaintiff's assertion that he was unaware of the forum-selection clause, his initials on every page of the Subcontract Agreement

6

indicate otherwise.  (See Mot., Ex. 1 at 1–32.)  On the page containing the forum-selection clause, Plaintiff initialed twice and his initials appear under the paragraph directly below the forum-selection clause.  (Id at 27.)

Plaintiff also argues that the forum-selection clause was not "bargained for," there was "no additional consideration paid by Defendant to Plaintiff for said forum clause," and that therefore this should militate against enforcing the forum-selection clause.  (Resp. at 2–3.)  Again, that is not a proper consideration under Haynsworth, and in any event, this argument is without merit.  It is black-letter law that each provision in a contract need not be supported by independent consideration.  See Restatement (Second) of Contracts, § 80 cmt. a. (1981) ("One consideration for a number of promises.  Since consideration is not required to be adequate in value (§ 79), two or more promises may be binding even though made for the price of one.  A single performance or return promise may thus furnish consideration for any number of promises.")

Based on the foregoing, Plaintiff has not alleged that Defendant's inclusion of the forum-selection clause in the Subcontract Agreement was, in itself, the product of fraud or overreaching.  Thus, Plaintiff has not satisfied the first prong of the Haynsworth test.

      b.    Plaintiff Will Not Be Deprived of His Day in Court By the Grave Inconvenience or Unfairness of the Chosen Forum

Next, Plaintiff asserts that he will be deprived of his day in court

7

because of the grave inconvenience of the Oklahoma court. (Resp. at 4.) He contends that he does not have the resources to litigate this suit in Oklahoma; specifically, he lacks the funds to pay for the transportation or lodging of the witnesses needed to testify at trial and also lacks the funds to pay for the depositions of all witnesses needed to testify at trial. (Id. at 4.) He avers that all of his witnesses are residents of Texas, are readily available to testify at trial in Texas, and deposition costs can be eliminated by allowing the case to remain in Texas. (Id. at 4–5.) Finally, Plaintiff asserts he does not have the resources to hire an attorney to represent him in Oklahoma and he will therefore effectively be "without legal representation" upon transfer of the case to Oklahoma, denying him of his right to legal counsel. (Id. at 5.)

In Abramson, the plaintiff alleged similar circumstances by claiming that if the motion to transfer were granted, her financial circumstances would render her unable to retain new counsel and reassert her claims in Virginia. 393 F. Supp. 2d at 442. The court held her assertions did not meet her burden of demonstrating that the consequences of granting the defendant's motion to transfer were so grave as to deprive her of her day in court. Id. In so concluding, the court noted: "As the Supreme Court suggested, in dicta, in Carnival, the expense of trying a case in a particular forum is insufficient to satisfy a party's burden under

8

Bremen[1]." Id. at 443 (citing Carnival Cruises Lines, Inc. v. Shute, 499 U.S. 585, 594 (1991)). Further, the court reminded that the plaintiff asserted no evidence that she could not obtain counsel in Virginia on a contingent fee basis. Id.

Plaintiff has not demonstrated his inability to obtain legal representation in Oklahoma on a contingent fee basis or for a percentage of his recovery. Additionally, despite his assertions that he does not have the money to pay for the transportation or lodging of his witnesses, he fails to identify who those witnesses are or how they are needed for his case.

According to his Complaint, he resides in Uvalde, Texas, and the work he performed under the Subcontract was on Laughlin Air Force Base, which is located in Val Verde County, Texas. (Compl. at 2–3.) Defendant is a general construction company that is incorporated in and has its principal place of business in Oklahoma. (Id. at 1–2.) Based upon this information, the Court assumes that the witnesses Plaintiff refers to are located in either Val Verde County, Texas, Uvalde, Texas, or in Oklahoma. Thus, even those witnesses Plaintiff asserts are located in Texas will be required to travel to testify in this Court—which is located

---

[1] The Bremen test is the same four-factor test as set forth in the Fifth Circuit's opinion in Haynsworth. See Haynsworth, at 963 (citing M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1 at 17 (1972)).

in San Antonio, Texas.[2] Based on the foregoing, Plaintiff has failed to demonstrate that he will be denied of his day in court due to grave inconvenience of the chosen forum.

   c. <u>Enforcement of the Forum-Selection Clause Would Not Contravene a Strong Public Policy of Texas</u>[3]

Next, Plaintiff asserts that enforcement of the forum-selection clause will contravene a strong public policy of the state of Texas "in that, in Texas a litigant has the right to pursue his/her cause in court notwithstanding his/her financial situation." (Resp. at 5.) Specifically, he argues that if the case is transferred to Oklahoma, he will be without legal representation and, thus, will be denied his ability to properly and adequately present his case. (<u>Id.</u> at 5–6.)

However, permitting pursuit of a claim irrespective of one's financial situation is by no means a public policy unique to Texas. Moreover, as discussed above, Plaintiff has presented no evidence of his inability to secure counsel on a contingent fee basis. Aside from financial circumstances, Plaintiff has not set forth

---

[2] According to Google Maps, Laughlin Air Force Base is located approximately 150 miles from the John H. Wood Courthouse in San Antonio, Texas; Uvalde, Texas, is approximately 85 miles away.

[3] An additional <u>Haynsworth</u> factor considers whether the "fundamental unfairness of the chosen law will deprive the plaintiff of a remedy." Plaintiff does not address this factor of the unreasonableness test, and, in any event, the Subcontract Agreement specifically provides that the Agreement shall be governed by the laws of the State of Oklahoma. (Mot., Ex.-1 at 27.) Therefore, because Oklahoma substantive law applies regardless of the venue, transferring the case to the Western District of Oklahoma will not deprive Plaintiff of a remedy.

10

any evidence that the Western District of Oklahoma would be unable to provide him an adequate adjudication of his claims.

Moreover, while Texas certainly has a strong public policy that a litigant have the ability to adequately present his case, there is also a strong public policy that parties be held liable to what they contracted for. Although Plaintiff avers he was unaware of the terms of the Subcontract, "as the Fifth Circuit has indicated, enforcement of a forum selection clause against a party who has chosen not to read the terms of her contract does not conflict with the public policy interests of the State of Texas." Abramson, 393 F. Supp. 2d at 443.

In summation, having assessed the four factors as outlined in Haynsworth, 121 F.3d at 963, the Court finds that the forum-selection clause in the Subcontract Agreement is valid and enforceable.

II.   Section 1404(a) & Atlantic Marine

In Atlantic Marine Construction Co., Inc. v. United States District Court For the Western District of Texas, 134 S. Ct. 568 (2013), the Supreme Court held that a valid forum-selection clause should be given controlling weight in all but the most exceptional cases. Id. at 581. The Court held:

> The "enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interest of the justice system." For that reason, and because the overarching consideration under § 1404(a) is whether a transfer would promote "the interest of justice," "a valid forum-selection clause [should be] given controlling weight in all but the most exceptional

11

cases."

Id. (internal citations omitted) (citing Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22 at 33 (Kennedy, J., concurring)). Typically, when a forum-selection clause is not present, a court considering a § 1404(a) motion must evaluate both the convenience of the parties and various public-interest considerations. Id. "Ordinarily, the district court would weigh the relevant factors and decide whether, on balance, a transfer would serve 'the convenience of the parties and witness' and otherwise promote 'the interest of justice.'" Id. (quoting 28 U.S.C. § 1404(a)).

When a valid forum-selection clause is present, however, the district courts must adjust the § 1404(a) analysis in three ways: (1) the plaintiff's choice of forum merits no weight; (2) the court is not to consider arguments about the parties' private interests[4]; and (3) when a party files suit in a different forum despite a valid forum-selection clause, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules—a factor that may affect public-interest considerations. Id. at 582–83. District courts should adjust their usual § 1404(a) analysis in these three ways in order to "not unnecessarily disrupt the parties' settled expectations." Id.

---

[4] The private factors include: (1) the relative ease of access to sources of proof; (20 the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. In re Volkswagon, AG, 371 F.3d 210, 203 (5th Cir. 2004).

Therefore, pursuant to Atlantic Marine, when determining whether extraordinary circumstances exist that warrant denial of transfer, only the public-interest factors of a traditional § 1404(a) analysis may be considered, including: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law. Id. at 581–82.

Plaintiff does not argue any of these factors, but instead argues that "the practical implication of a forum selection clause is that it amends 28 U.S.C. § 1391 by removing the other forums where a lawsuit can be filed, and only recognizes and allows a lawsuit to be filed in the forum contained in the clause." (Resp. at 6.) He continues by emphasizing that "[c]onsequently, the [e]ffect of a forum selection clause is that it abrogates 28 U.S.C. § 1391 without adhering to the proper protocol, i.e., legislative process." (Id.) Plaintiff's argument is without merit.

Courts have continually recognized the validity and enforceability of forum-selection clauses and the ability of parties to include such clauses in contracts between them. Nat'l Equip. Rental, Ltd. v. Szukhent, 375 U.S. 311, 315–16 (1964) ("[I]t is settled, as the courts below recognized, that parties to a contract may agree in advance to submit to the jurisdiction of a given court, to permit notice

13

to be served by the opposing party, or even to waive notice altogether."). In fact, the Supreme Court has held:

> When parties have contracted in advance to litigate disputes in a particular forum, courts should not unnecessarily disrupt the parties' settled expectations. A forum-selection clause, after all, may have figured centrally in the parties' negotiations and may have affected how they set monetary and other contractual terms; it may, in fact, have been a critical factor in their agreement to do business together in the first place. In all but the most unusual cases, therefore, "the interest of justice" is served by holding parties to their bargain.

Atl. Marine, at 583.

Plaintiff has not argued any of the public-interest factors of a traditional § 1404(a) analysis, and, finding none present, the Court hereby concludes that Plaintiff has not met their burden of demonstrating extraordinary circumstances; therefore, the Court finds that a transfer of venue is warranted pursuant to the contractually valid forum-selection clause.

## CONCLUSION

For the aforementioned reasons, the Court **GRANTS** Defendant's Motion to Transfer Venue to the United States District Court for the Western District of Oklahoma (Dkt. # 7.).

IT IS SO ORDERED.

DATED: San Antonio, Texas, June 9, 2014.

_____
David Alan Ezra
Senior United States Distict Judge